Good morning again, ladies and gentlemen. Our next case is Publishing Technologies v. RPX Corporation, 2020-14-20 and 14-21. Mr. Pitcock. Yes, Ron. Please proceed. May it please the Court. This case involves two procedural and one substantive issue on appeal. The procedural issues are, does it violate the APA when a panel does not construe the vast majority of the claims of a patent and instead adopts the thus deprives the patent owner of any meaningful ability to argue that the claims are still patentable over the prior art under the proper construction. The second... Wasn't this related to the decision to institute? And in any event, didn't the Board decide you had plenty of opportunity to comment on the meaning of the claims? Well, Your Honor, so we're not challenging. I understand under Thrive that the institution over the lack of claims construction on RPX's part is not appealable. The question is whether the failure to construe the claims during after institution was a violation of the Administrative Procedures Act. So in that sense, we're not challenging the institution decision. And although the Board claims that we had the ability to do so, this is from a patent that had been previously litigated. And under the district court's previous construction, various parties had been able to successfully argue that their various websites and mobile websites did not infringe the claims of the patent. And those constructions were not put in front of the Board in any way by RPX, but instead were put in front and we suggested them as the proper construction of the claim terms. But in any event, we needed to know whether that narrow construction was the proper construction that the Board was going to adopt or whether or not the Board was going to adopt a broader construction because this was at a time when BRI was the applicable standard for the claims during the inter-parties proceedings and not the Phillips claims construction, which is what the court, of course, used in the previous litigation. Instead, the Board simply adopted the, quote-unquote, plain and ordinary meaning of all the terms and phrases in the patent. And although they claimed that we had the ability to then address what they had specifically said was the wrong construction of the claim terms, I mean, I suppose that, you know, under their theory, we should have, even after they told us that, no, your claims construction is not going to be adopted, that we should have tried to develop evidence from experts and other third parties and put that forward and been able to depose their expert. None of that was able to be done because we did not have the construction of the claims at all. It's not even a matter of changing it, that the plain and ordinary meaning of the terms... Mr. Pincock, can I interrupt just a minute? This is Ted Hughes. When you say you didn't have those constructions, I'm a little confused. Aren't these the constructions you proposed? This isn't a case, is it, where the Board came up with new constructions that the parties weren't aware of for the first time in its final decision. These were the constructions you proposed to the Board. Yes, Your Honor, that is correct. Well, how is it an APA violation for the Board to adopt your constructions when you were on notice that they could potentially be used and have the ability to argue them to the Board? Well, they had told us, Your Honor, that they weren't going to use them, that they were not adopting them, that they were adopting something... Did they exclude you from arguing anything in your briefs or your argument on trial to them about those constructions? Well, they did not issue, Your Honor, any orders that would have excluded argument on those topics. But functionally, I mean, you have limited space and limited time in an IPR proceeding. You have to pick and choose. I mean, the amount of prior art in both of these, this is really a consolidated two-hearing case that you have to address in all of your papers, functionally leaves you little time to develop cases under multiple claims constructions for the various terms. What portion of the APA do you think this violates? Well, I would say 506, that, you know, the Board has to give reasons for its determinations. It has to act in a rational and logical manner. And here you don't have... There's no real rationale. In fact, there's no real decision by the Board on what the claims mean until they announce it at the hearing themselves. And that does not comply with... Sorry, Your Honor. With the... At least the requirement that they have a rational or proper factual underpinning for their decisions. I'm still a little confused how the Board's decision to adopt your proposed claim constructions, which you say are narrower, is any kind of harmful error here. It seems like by adopting your constructions that you had a better chance of proving these plain and ordinary meaning constructions. Why isn't it at worst harmless there? Well, I completely agree with you, except that we didn't really have a chance to argue under our constructions. They only adopted them at the end after all of our time to develop arguments, write our briefs, and do everything else had passed. And, you know, that's what you're going to face again and again is petitions where despite the statutory requirement that you construe the claims so that the patent owner has advanced notice of their... What they need to argue... Isn't that just litigation strategy? I mean, there's nothing that prevented you from saying, look, our patents are invalid or valid under the plain and ordinary meaning, but we are incorrect, and you should have construed them under these narrower definitions as an alternative basis. I recognize that there are limitations on pages and stuff like that, but that's true in every court. Why wasn't that your choice of litigation strategy and not a harmful procedural error on the Board's part? Well, we did, Your Honor. We did do exactly that in our response to their petition. We said, no, you ought to adopt these narrow constructions. And then the Board say, yes, you're right. They didn't even say, well, here's where we think BRI differs from this scope that you're on. I'm on a conference. I can't tell if you're trying to ask me a question in the middle. I'm sorry, Your Honor. No, keep going. It's on me. Okay. I apologize. So that's exactly what we did was they came in with their petitions. They said, you should adopt this plain and ordinary meaning, whatever that means for the vast majority of the claim terms. They had been construed before. We suggested that the court adopt the previous construction for all the terms, and the court didn't hold it in abeyance. They didn't ask for additional briefing. They didn't give us any guidance whatsoever other than to say, no, we disagree, and we're going to adopt the, quote, unquote, plain and ordinary meaning. And that doesn't give you anything to go on at all. You don't know. But what happened after that? Did you not have the opportunity to submit another brief and argue to the board? Yes, and we did under, and we did the best that we could under the construction that we were given at the time. Your time just expired, but let me just ask one more question. Did any of that subsequent briefing and argument to the board, did you re-raise your argument that the narrow construction should apply and why you were still valid? Well, we didn't have a chance. What do you mean you didn't have a chance? Again, the board did not, I'm sorry. I withdraw my question. I'm done. I'd like to reserve the rest of my time for rebuttal. Thank you, Mr. Pittcock. I think you said earlier that the first time you learned that the board was not going to use plain and ordinary meaning, but instead was going to adopt your constructions was at the hearing. Is that correct? Yes, your honor. So not in the final decision, which they handed to you, but so at the beginning of the hearing, the board said, by the way, we're going to use your definitions. Is that what they said? Yes, your honor. Well, now when they said that to you, did you say, whoops, I've been prejudiced, judge. You prejudicing me and harming me by only telling me this now. Did you make that complaint? Your honor, I tried to do the best job I could to address the hearing. Mr. Pittcock, you know what I'm talking about. Did you say I object? I have been harmed. You can't do that. I did not. I do not recall raising an objection to their, to their adopting claims constructions at the hearing at the, at the hearing itself. No, your honor. And you have not yet made a showing that you in fact were harmed by the patient of your preferred claim constructions. Well, I, I think I have your honor. I believe that under the proper claims constructions, we would win. Where have you demonstrated that you were harmed by the board having used your claim constructions other than the fact that you lost? Well, your honor had the court had the, had the IPR panel adopted our argument, we could easily have raised technical arguments supported by expert declarations, et cetera, that the, that the prior art cited did not meet the claim terms, but I had no opportunity to do any of that because it was only at the one of the main things is could under the proper constructions are you allowed to have the user define the mobile website in order to have the mobile data potentially appear? Is the mobile data actually external to the, to the website? None of those issues. You've answered my question, sir. I think you're okay. Thank you. Yes, I am. I'd like to reserve the rest of my time for we will service volumes to pick up Mr. Summer. Thank you, your honor. May it please the court, Andrew Summer for FLE RPX corporation. I'd like to dive back into the APA issue that we've been discussing here this morning and kind of point out the history of this RPX proposed one construction in its petition, and that was for mobile website. And if you look at the board's institution decision and what it did, which is around appendix page 306, the board looked at that and rejected our construction. In fact, it said your construction's too narrow RPX. We're going to adopt the one that the district court used and the one that was advocated for by publishing. Then the, then the board also went ahead and said, we don't see any need to construe any further terms at this time. With respect to publishing's claim that they had no opportunity to argue their position under the district court's construction, I'll point to their patent owner response. At page appendix page 374, the first paragraph of the argument, none of the prior art teaches a content management website. That first sentence says in accordance with the previous construction of the term adopted by the district court. They go on to attack our challenge based on the generating a mobile website configured to receive data automatically on page 375 of the appendix. And again, they argue under the district court's claim construction, we hadn't met our burden. There is no harmful error here. And I don't know what good a remand would serve if this court were to conclude that the board is obligated to announce a claim construction prior to the time of the hearing. But what's more, in this case, RPX did put publishing on notice that it had no issues with the constructions. And the reason that it did so is reflected in publishing's briefing, the district court applied the plain and ordinary meaning of the terms, which is consistent with what RPX said in its petition. If you look at appendix page, sorry, your honor, 256, you see that publishing is arguing for the plain and ordinary meaning. It says that the district court under Phillips attempted to apply the plain and ordinary meaning of the language of the claims. Again, appendix page 452, they argued to the board that automatic should be given its plain and ordinary meaning, which is exactly what the district court applied. And we agree. And we believe that our prior art meets that language under the district court's construction. We said this in our reply briefing before the board. Publishing had a sir reply to respond to our arguments. And then we went to the oral hearing. And it didn't say that it was prejudiced, as Mr. Pitcock agreed, by the board adopting its own constructions. With respect to the RPI issue, in our view, your honors, it's kind of more from one argument about publishing never agreeing to accept the discovery that RPX agreed to give it during proceedings to. It did so only begrudgingly and at the insistence of the board, essentially raising a due process challenge to the board's procedures on discovery for the first time in reply. Your honors, we submit that argument has been waived. But even so, the cases that publishing cites to support this relate to revocation of a security clearance based on confidential information submitted by a confidential informant that some individual was a communist, or revocation of welfare benefits without the ability to confront witnesses. And really what these cases say is that an agency or government entity can't act to the prejudice and certainly material prejudice in these cases of those individuals without giving them the right to confront the evidence that's being used against them. Those are simply inapplicable here. The board's evidence is up record. The fact findings are up record. They're unchallenged on appeal. So we believe that that aspect, even if it could be reached by this court, and we submit it cannot under Thrive and ESIP Series 2, should be affirmed. Finally, with respect to the challenge based on Underwood and the board's findings, we submit that if this court agrees that the board's findings on Underwood are supported by substantial evidence, it doesn't need to go any further and touch the Austin grounds. And we submit that the board's decision is supported by substantial evidence. First, it's undisputed that Underwood teaches a content management website that it calls a definer. And that at this definer, a user trying to build a website is able to designate what they call definer external components or DXCs. These DXCs are custom applications that live outside of the definer environment and are plugged into webpages. There's also disclosure in Underwood, as the board found, of a user ensuring that their site displays properly on reduced capacity devices and even having the website able to detect the capabilities of the on those reduced capacity devices, such as cell phones. We submit that that is substantial evidence that supports the board's fact findings and conclusions that the challenge claims are unpatentable. And unless your honors have any additional questions. Counsel, do you think Underwood applies to all of the claims? Yes. So there's a variety of findings and grounds, but yes, Underwood does, your honor. And there's some helpful charts that the board prepared, found at page Appendix 77 and Appendix 106. And if you map through those, the chart, every one of the claims has been validated under the Underwood grounds. That isn't true of the Austin grounds because the board decided that once it had invalidated certain dependent claims, it didn't need to reach the alternative arguments. I'm hearing no further. Thank you very much, your honor. So we will hear from Ms. Craven from the Patent Office briefly. Yes. May it please the court, the director intervened in this appeal solely to defend the unreviewability of the board's real party and interest decision. That decision is final and non-appealable under Section 314D, as this court held in ASEP. Publishing Tech's counsel didn't raise this in their opening argument. So unless the court has any questions, I will yield the remainder of my time. Hearing none, we'll go back to Mr. Pitcock, who has two minutes left for rebuttal. Yes, your honor. So to address the issue on the IPR and whether or not the real party and interest can be appealed, Thrive did not come out. So none of the parties, including RPX, argued that the appeal was somehow barred by the statute. So if anybody has waived that argument, it would be RPX, not us. But since there was a subsequent change in law, of course, we addressed it. This court essentially, you know, has a choice. Can the PTO, can a panel of the PTO essentially overturn all of the decision making in applications in time with respect to RPX in that case on what constitutes a real party and interest simply by saying, well, that's not data, even when they knew and have a precedential opinion that former members or current members of RPX are in fact real parties and interest and can be barred. And even though it's supposed to be RPX's burden under worldwide to show that there are no real parties and interest, I would argue exactly the due process procedural shenanigans that was carved out of Thrive as an exception to the non-appealability of those decisions. This isn't a case where anybody knows the facts and everybody knows the facts like Thrive and similar cases. This is a case where because the to give any information about its customers, RPX even keep some of those members a secret from everyone. So it's quite conceivable that there would be a real party and interest and you wouldn't know it until it's too late. And because they didn't require, I'm sorry, my time is up. You can finish your sentence. So, you know, there's no factual predicate for treating RPX differently in this case than applications and internet time. There was no factual basis to distinguish it by the board. And this is exactly the exception that should have come up under Thrive. Thank you, counsel. We appreciate all the arguments and the cases submitted. Thank you, your honor.